David R. Ehrlich, Esq. (de-9786)
Stagg Wabnik Law Group LLP
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4518
dehrlich@staggwabnik.com

*Attorney for Plaintiff*
*Sajmir Muja*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

SAJMIR MUJA,                                               Docket No.:    26-cv-6117

                          Plaintiff,

              -against-
                                                          **COMPLAINT**

APPLIED FUND SOLUTIONS, LLC, DANIEL          **JURY TRIAL DEMANDED**
NICKI and MICHAEL GALVIN, as individuals,

                          Defendants.
---------------------------------------------------------------X

Plaintiff SAJMIR MUJA ("Plaintiff"), by and through Stagg Wabnik Law Group LLP, as

and for this Complaint, complains of the Defendant APPLIED FUND SOLUTIONS, LLC

("AFS"), Michael Galvin ("Galvin"), and Daniel Nicki ("Nicki") (collectively "Defendants") and

alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action to recover wages, specifically unpaid overtime, and for

liquidated damages, based on Defendants' failure to pay Plaintiff for all hours worked over 40 in

a given week in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law

and its commensurate regulations.

2.      Plaintiff also brings this action to recover damages based on Defendants' blatant and explicit threats made to him when he asserted his rights under the FLSA and New York Labor Laws for unpaid overtime.  Plaintiff, who is an immigrant from Albania, recently received his Green Card pursuant to his marriage. Within three days of Defendants receiving an attorney letter setting forth its wage violations, one of Defendant's principals, Michael Galvin, sent Plaintiff a WhatsApp message in the middle of the night, stating how he was angry about Plaintiff's assertion of his rights, and explicitly threatening to report him for immigration fraud—asserting that Plaintiff's marriage was a fraud.  Not only was Mr. Galvin incorrect about Plaintiff engaging in immigration fraud (his marriage was vetted and approved by the immigration services), but such threatening conduct violates New York Labor Law section 215 and is a class B misdemeanor.

3.      Defendants also violated New York Labor Law 195 by failing to provide Plaintiff with the statutorily required wage notice (which would have addressed the overtime issues and characterization of Plaintiff as exempt or non-exempt), and incorrect and improper wage statements.

4.      As a result of Defendants' violations of law, Plaintiff is entitled to unpaid wages, liquidated damages, emotional distress damages, punitive damages, statutory damages, and attorney's fees.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, federal question jurisdiction, because Plaintiff asserts claims violating 29 U.S.C. § 216(b) — the FLSA.

6.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1337, actions arising under an Act of Congress regulating commerce, because Plaintiff asserts claims violating 29 U.S.C. § 216(b) — the FLSA.

7.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District, Plaintiff resides in the District and Defendant maintains their principal place of business in the District.

## **PARTIES**

*Plaintiff*

9.    Plaintiff SAJMIR MUJA is an adult who resides in Bronx County, New York.

10.    Plaintiff was a covered employee within the meaning of the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL).

*Defendants - AFS and Individuals*

11.    Defendant Applied Fund Solutions ("AFS") is a domestic Limited Liability Company with a principal place of business at 45 Rockefeller Plaza, Suite 2000, New York, New York 10111.

12.    AFS is a covered employer within the meaning of the FLSA and NYLL.

13.    At all relevant times, AFS maintained, controlled, had oversight, and direction over Plaintiff, including, but not limited to, hiring, firing, discipline, timekeeping, payroll and other terms or conditions and employment practices.

3

14.    AFS is the payor of all wages paid to Plaintiff, and made all decisions related to how Plaintiff was to be paid.

15.    AFS is an employer pursuant to the FLSA, 29 U.S.C. § 203(d)(2020).

16.    At all times relevant to the allegations contained in the complaint, AFS was, and is, engaged in interstate commerce in that AFS, in the regular course of business, continuously and systematically utilized interstate communications and interstate transactions, producing over $500,000 in revenue annually.

17.    Defendant Daniel Nicki is the founder and Managing Partner at AFS.

18.    Defendant Daniel Nicki was responsible for overseeing all daily operations of AFS.

19.    Defendant Daniel Nicki had power and authority over all the final personnel decisions of AFS.

20.    Defendant Daniel Nicki had the power and authority over all final payroll decisions of AFS, including for Plaintiff.

21.    Defendant Daniel Nicki had the power to hire and fire employees, including the Plaintiff.

22.    Upon information and belief, Defendant Daniel Nicki is responsible for determining, establishing and paying the wages of all employees of AFS, including the Plaintiff, setting their work schedules, and maintaining all their employment records of the business.

23.    Defendant Michael Galvin is a Partner at AFS.

24.    Defendant Michael Galvin was also responsible for overseeing all daily operations of AFS.

25.    Defendant Michael Galvin had power and authority over all the final personnel decisions of AFS.

26.     Defendant Michael Galvin had the power and authority over all final payroll decisions of AFS, including the Plaintiff.

27.     Defendant Michael Galvin had the power to hire and fire employees, including the Plaintiff.

28.     Defendant Michael Galvin was responsible for determining, establishing and paying the wages of all employees of AFS, including the Plaintiff, setting their work schedules, and maintaining all their employment records of the business.

## STATEMENT OF FACTS

29.     AFS operated a financial services and consulting firm that provides CFO services, shadow accounting, and middle-and back-office solutions to alternative investment funds, such as private equity and hedge funds.

30.     In September 2024, Defendants hired Plaintiff and gave him the title of Operations Analyst.

31.     Defendants told Plaintiff his hours would be from 8:30 a.m. to 4:30 p.m., five days per week.  Defendants agreed to pay Plaintiff at the rate of $65,000 per year for working 8:30 a.m. to 4:30 p.m., five days per week.  They also promised that he would receive health insurance benefits and free lunch on a daily basis as a benefit.

32.     Defendants did not provide Plaintiff with the statutorily mandated wage notice, *i.e.*, the form employers are required to provide to employees setting forth, *inter alia*, their wage rate, overtime rate, and whether the employee is exempt from overtime.

33.     Plaintiff was a non-exempt employee and was entitled to receive overtime for all hours worked over 40 in a given week.  This was his first job upon the completion of his schooling. Plaintiff maintained no licenses or certifications.

34.     One of Plaintiff's chief responsibilities involved trade reconciliations.  This was a process in which Plaintiff checked the trade reports (usually three reports) to make sure they were consistent, *i.e.*, that all parties to the transaction had the same price and terms on their reports.

35.     Plaintiff did not conduct trades.  Plaintiff did not advise clients with respect to what trades to make.  Plaintiff did not book the trades or do the accounting associated with the trades. He simply reviewed the reports to make sure they were consistent.

36.     Plaintiff also did basic administrative work such as checking over contracts to make sure the party names and information were correct and sent the contracts to customers or vendors. He did not draft nor negotiate any contracts.

37.     Plaintiff performed other miscellaneous office tasks such as processing invoices, and ordering and unloading supplies.

38.     Plaintiff did not supervise any employees, rather all his duties were supervised, and he was not free to make any independent decisions about material issues of the company.

39.     Although Plaintiff had a background in accounting (his schooling), he did not work in the accounting department, did not perform any accounting work, did not perform audits, did not do any bookkeeping work, did not do any tax analysis, and did not provide any tax or accounting advice or services to AFS or its clients.

40.     Plaintiff did not perform any tasks that required advanced knowledge in a field of science or learning, or that required high-level or specialized training or intellectual instruction.

41.     Plaintiff clocked in and clocked out every day he worked.  He has the precise hours he worked from September 2024 to April 2026.

42.     From September 2024 through April 2026, Plaintiff generally worked five to six days per week, and between 40 and 60 hours per week.

43.     For the majority of weeks between September 2024 to April 2026, Plaintiff worked between 47 and 52 hours per week.

44.     From September 2024 through April 2026, Plaintiff worked 655.28 hours of overtime, *i.e.*, 655.28 hours over 40 in the applicable weeks.

45.     Plaintiff was entitled to receive pay at the rate of time and a half for all hours worked over 40 in a given week.

46.     Plaintiff received no pay for the hours he worked beyond 40 in a given week; he received no pay for the 655.28 hours of overtime that he worked.

47.     Plaintiff only received his base pay at the rate of $65,000 a year or $1250 a week. A rate based on a 40-hour work week.

48.     Defendants' failure to pay Plaintiff for the 655.28 overtime hours is a violation of the FLSA, 29 U.S.C. § 201 (2020) *et seq.*; 29 U.S.C. § 203(e)(1) (2020), and the New York Labor Laws, 12 NYCRR 142-2.2

49.     Plaintiff has been damaged by not receiving any pay for his overtime hours and not receiving pay at time and a half for his overtime hours.

50.     Defendants failed to offer or provide health insurance benefits to Plaintiff until December 2025, more than one year and three months after he started working for AFS. Defendants breached their promise to provide Plaintiff with health benefits—part of their offer of employment made in the fall of 2024.

51.     Defendants did not provide Plaintiff the statutorily required wage notices reflecting his rate of pay, his overtime rate, or whether AFS characterized him as non-exempt or exempt. This is a violation of New York Labor Law section 195(1).  Plaintiff is entitled to damages of $5,000 plus attorney's fees for that violation.

52.     Defendants failed to provide Plaintiff with an accurate wage statement which failed to reflect his overtime hours and overtime wages in violation of New York Labor Law section 195.

***Defendants Retaliate Against Plaintiff For Asserting his Rights By Threatening To Report Him to Immigration Services - Defendants' Retaliation is a Class B Misdemeanor***

53.     Plaintiff is an immigrant from Albania.

54.     Plaintiff was not a United States Citizen when he was working for AFS.

55.     Plaintiff met and fell in love with a woman in the United States.

56.     Plaintiff and his now current wife got married.

57.     Plaintiff sought a Green Card because of his marriage to a United States citizen.

58.     Immigration services vetted and examined Plaintiff's marriage to determine whether it was legitimate before approving his Green Card application and issued Plaintiff a Green Card.

59.     Plaintiff went through this process while working for AFS.  Defendants knew about Plaintiff's marriage and his seeking a Green Card based on his marriage.

60.     Immigration services determined that his marriage was legitimate and issued Plaintiff a Green Card.

61.     After Plaintiff resigned his employment, he sought legal counsel with respect to Defendants' failure to pay him for the overtime hours worked.

62.     Counsel sent Defendants a letter laying out the FLSA and New York Labor Law violations, including the failure to pay overtime and failure to provide a wage notice.

63.     Three days after receiving the attorney letter asserting Plaintiff's claims, Michael Galvin, a principal of AFS, sent Plaintiff a series of WhatsApp messages at 2:27 a.m.

64.     Galvin began his threats to Plaintiff by stating, "You should know we know about your marriage fraud.  Incredible."

65.    Galvin continued by making another immediate post stating, "Immigration fraud."

66.    Galvin then said, "we gave you an opportunity.   Incredible way to repay us [referring to the attorney letter he just received]."

67.    Finally, Galvin ends his rant by stating, "I'm of the mind to drop a dime to explore." The expression "drop a dime" means to snitch or secretly inform on someone to the authorities.

68.    Galvin's comments at 2:27 a.m. three days after receiving a lawyer letter was designed to threaten and intimidate Plaintiff because he asserted his rights under the FLSA and New York Labor Law.

69.    Galvin's comments, designed to threaten and intimidate Plaintiff for asserting his rights under the labor laws, amounts to illegal retaliation in violation of New York Labor Law section 215.

70.    Galvin's threats and intimidation as explained above amounts to a crime—a Class B Misdemeanor.

71.    Threats made to individuals about immigration issues at this point in time in the United States is cruel and instills horrible fear into those who are not citizens (even though Plaintiff has a Green Card).

72.    As a result of Galvin's retaliation, threats and intimidation, Plaintiff suffered severe emotional distress.

**Count 1**

**For a Claim for Violation of the FLSA § 207(a)(1) for Failure to Pay Overtime Wages**
**(Against All Defendants)**

73.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully restated herein.

9

74.     During Plaintiff's employment, Plaintiff worked over forty hours per week regularly during his employment with AFS and was not paid overtime wages.

75.     Defendants' failure to pay time and one half for all hours worked by Plaintiff is a violation of 29 U.S.C. § 207(a)(1).

76.     Defendants' failure to provide Plaintiff with overtime wages was willful and in reckless disregard to Plaintiff's rights.

77.     As a direct and proximate cause thereof, Plaintiff is entitled to damages in the form of overtime wages and liquidated damages for Defendants' willful failure to pay overtime wages, interests, attorneys' fees and costs as may be proven at trial.

78.     Due to Defendants FLSA violations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

### Count II

### As and For a Claim for Violation of NYCRR § 142-2.2 for Failure to Pay Overtime Wages
**(Against All Defendants)**

79.     Plaintiff realleges and incorporates by reference all allegation in all preceding paragraphs as if fully stated herein.

80.     During Plaintiff's employment, Plaintiff worked over forty hours per week regularly during his employment with AFS and was not paid overtime wages.

81.     Plaintiff was entitled to overtime pay, as he was a non-exempt worker.

82.     Defendants' failure to pay time and one half for all hours worked by Plaintiff is a violation of 12 NYCRR §§ 142-2.2.

83.     Defendants' failure to provide Plaintiff with overtime wages was willful and in reckless disregard to Plaintiff's rights.

84.     As a direct and proximate cause thereof, Plaintiff is entitled to damages in the form of overtime wages and liquidated damages for Defendants' willful failure to pay overtime wages, interests, attorneys' fees and costs as may be proven at trial.

85.     Due to Defendants New York Labor Law violations and violations of New York's labor regulations, Plaintiff is entitled to recover from Defendants, jointly and severally, his unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorney's fees and costs of the action, including interest.

## Count III

### As and For a Claim for Violation of New York Labor Law § 215 for Employer Retaliation
### (Against All Defendants)

86.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

87.     During Plaintiff's employment, Plaintiff regularly worked overtime but did not receive overtime compensation.

88.     When Plaintiff asserted his rights to Defendants for overtime compensation from which he was deprived, Defendants sent messages to him explicitly stating that they were going to report him for immigration fraud.  The messages were designed to intimidate and threaten him because he asserted his right to overtime pay.

89.     Defendants threatening messages amount to illegal retaliation in direct violation of N.Y. Lab. Law §215.

90.     Defendants' acts of retaliation and intimidation amount to a class B misdemeanor pursuant to N.Y. Lab. Law §215(3).

11

91.     Defendant's retaliatory tactics in response to Plaintiff's complaint about not receiving overtime wages was willful and in reckless disregard to Plaintiff's rights

92.     As a direct and proximate cause of Defendants' retaliation, Plaintiff is entitled to damages in the form of compensatory damages, emotional distress and statutory damages.

93.     As a result of Defendants egregious, illegal and criminal acts, Plaintiff is entitled to punitive damages.

**Count IV**

**As and for a Claim for Violation of New York Labor Law § 195 for Failure to Provide a Wage Notice**
**(Against AFS)**

94.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

95.     Pursuant to N.Y. Lab. Law § 195 an employer shall provide each employee with a notice containing the rate of pay.

96.     Plaintiff was an employee of AFS.

97.     AFS were statutorily required to provide Plaintiff with the wage notice set forth under N.Y. Lab. Law § 195.

98.     During Plaintiff's employment, Defendants failed to provide Plaintiff with the statutorily required notice containing the rate of pay, rate of overtime pay, date on which payments were to be made and other information statutorily required under N.Y. Lab. Law § 195.

99.     The failure by AFS to provide the wage notice is significant because Plaintiff was deprived of information regarding his rate of pay, overtime rate and classification as non-exempt, which are issues that are the subject of this action.

12

100.    Plaintiff was harmed by not receiving the information that is required to be provided in the wage notice AFS was required to provide to Plaintiff.

101.    Defendants' failure to provide notice containing the rate of pay was willful and deliberate.

102.    As a direct and proximate cause thereof, Plaintiff is entitled to damages for Defendants' willful failure to provide the statutorily required notice in the amount of $5,000.

**Count V**

**As and For a Claim for Violation of New York Labor Law § 195 for Failure to Provide Accurate Wage Statements**
**(Against AFS)**

103.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

104.    Pursuant to N.Y. Lab. Law § 195 an employer shall provide each employee with accurate wage statements.

105.    Plaintiff was an employee of AFS

106.    AFS were statutorily required to provide Plaintiff with accurate wage statements set forth under N.Y. Lab. Law § 195.

107.    AFS failed to provide accurate wage statements, as the statements failed to show overtime hours worked, overtime pay and overtime rate of pay.

108.    Failure to provide accurate wage statements were critical and allowed Defendants to violate the overtime laws.

109.    Defendants' failure to provide notice containing the rate of pay was willful and deliberate.

13

110.    As a direct and proximate cause thereof, Plaintiff is entitled to damages for Defendants' willful failure to provide the statutorily required notice in the amount of $5,000.

### Count VI

### As and For a Claim for Breach of Contract
(Against AFS)

111.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs as if fully stated herein.

112.    As part of the agreement between Plaintiff and AFS regarding Plaintiff's employment, AFS promised to provide Plaintiff with health insurance benefits.

113.    AFS failed to provide Plaintiff with health insurance benefits for the first year and three months of his employment.  Plaintiff was not provided with the health insurance benefit until December 2015, more than a year after he began his employment.

114.    AFS's failure to provide Plaintiff with health insurance benefits from September 2024 to December 2025 was a breach of the agreement between Plaintiff and AFS.

115.    As a result of AFS's breach of not providing the promised health insurance benefits, Plaintiff was damaged monetarily.

116.    As a direct and proximate cause thereof, Plaintiff is entitled to monetary damages equal to the value of health insurance benefits for 15 months.

### JURY DEMAND

117.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

14

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, respectfully requests that this Court grant the following relief:

a. Declaring Defendants' conduct complained herein to be in violation of the Plaintiff's rights under the FLSA, the New York Labor Law, and its regulation, New York Labor Law § 215 and New York Labor Law § 195;

b. Awarding Plaintiff for unpaid overtime wages;

c. Awarding Plaintiff liquidated damages pursuant to 29 U.S.C. 216 and New York Labor Law;

d. Awarding Plaintiff compensatory damages, including emotional distress, for violation of New York Labor Law § 215;

e. Awarding Plaintiff punitive damages for Defendants' violation of New York Labor Law § 215;

f. Awarding Plaintiff prejudgment and post-judgment interest;

g. Awarding Plaintiff the costs of this action together with reasonable attorneys' fees;

h. Awarding such and further relief as this court deems necessary and proper.

Dated: Garden City, New York
July 20, 2026

Respectfully submitted,

By: /s/ David R. Ehrlich
Stagg Wabnik Law Group LLP
David R. Ehrlich (de-9786)
401 Franklin Avenue, Suite 300
Garden City, New York 11530
(516) 812-4518
dehrlich@staggwabnik.com

15